IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ESTATE OF HAROLD BARSKY | : | CIVIL ACTION |
| | : | |
| v. | : | No. 20-4282 |
| | : | |
| WILMINGTON TRUST COMPANY, et al. | : | |
| | : | |

**MEMORANDUM**

**Chief Judge Juan R. Sánchez**                                                  **September 17, 2021**

The Estate of Harold Barsky ("the Estate") brings this action seeking recovery of death benefits paid to Defendants pursuant to an allegedly invalid life insurance policy. Defendants now move to dismiss the Amended Complaint arguing (1) the Estate fails to state a claim upon which relief may be granted, (2) the estate's claims are time-barred by the applicable statute of limitations, (3) this district is an improper venue, and (4) this Court lacks personal jurisdiction over Defendants. Because the Amended Complaint fails to establish the life insurance policy was void or that the Estate is otherwise entitled to relief, the Court will grant the motion.

**BACKGROUND**

Anita Barsky claims she and her late husband Harold Barsky were victimized by a scheme in which foreign investors coerced Mr. Barsky into taking out a life insurance policy, purchased the beneficiary interest from Mr. Barsky, and then collected the policy payout when Mr. Barsky passed away in 2017. Defendants in this case are Taiwanese investor entities: Hua Nan Commercial Bank, Ltd., Hua Nan Investment Trust Co., Ltd., Bank Sinopac, Taichung Commercial Bank, EnTie Commercial Bank, KGI Bank Co., Ltd., and MediaTek U.S.A. Inc.

Life insurance policy transactions like this are often referred to as " stranger-originated life insurance" or "STOLI" arrangements. It is generally illegal to purchase an insurance policy on the

life of another person. However, the insured individual may purchase a life insurance policy and then sell the beneficiary interest to investors. The investors will make premium payments for the remaining lifetime of the insured individual and collect payment upon the individual's death. These arrangements are generally profitable for all parties, including the insured. They are controversial, however, and some legislatures view STOLI arrangements as offensive to the strong public policy against wagering on human life.

Life insurance policies are often pooled and securitized for investors. The Defendants in this case purchased shares of securitized pools of life insurance policies, including the Barsky's policy, from the investment firm Private Equity Management Group, LLC ("PEM Group"). In 2009, the U.S. Securities and Exchange Commission ("SEC") filed a civil fraud suit alleging PEM Group defrauded investors through a ponzi scheme. The SEC case did not involve the legitimacy of the underlying policies. Instead, the SEC claimed PEM Group perpetrated securities fraud by covering losses with income from new investors. The SEC case resulted in a California federal court ordering the transfer of a portfolio of life insurance policies as restitution for victims of the PEM Group fraud scheme. Defs.' Mot. Ex. J, ECF No. 23-19. Most relevant to the instant case, the court also appointed Wilmington Trust Company as a securities intermediary for the investor defendants.

Anita Barsky, as executrix of the Estate of Harold Barsky, alleges Defendants were complicit or willfully blind in the PEM Group fraud. The Estate seeks recovery of Harold Barsky's policy proceeds, arguing the policy was void *ab initio* because there was no insurable interest at inception. In the alternative, the Estate argues Defendants were unjustly enriched.

Defendants now move to dismiss the Amended Complaint. First, Defendants argue Mr. Barsky's life insurance policy was valid because Mr. Barsky himself took out the policy, it was

2

thus supported by an insurable interest at inception, and the later transfer of the beneficiary interest did nothing to invalidate the policy under applicable state law. Defendants also argue the Estate's claims are time-barred by Pennsylvania's two-year statute of limitations period, this Court lacks personal jurisdiction over the foreign defendants, and this district is an improper venue. The Court held oral argument on August 24, 2021.

**DISCUSSION**

The Amended Complaint fails to allege facts sufficient to show that the policy was void *ab initio*, is otherwise invalid, or that Defendants were unjustly enriched. The Court will therefore grant Defendants' motion and dismiss the Amended Complaint.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter which, if accepted as true, "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff "must plead more than labels and conclusions," and "[f]actual allegations must be enough to raise the right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678; *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (describing three-step process for applying *Twombly* and *Iqbal*). A court deciding a motion to dismiss under Rule 12(b)(6) must "accept[] all of the complaint's well-pleaded facts as true." *Bruni v. City of Pittsburgh*, 824 F.3d 353, 360 (3d Cir. 2016).

At the outset, the parties dispute whether California or Pennsylvania law applies because significant contacts occurred in both states. A federal court hearing a diversity case must apply the conflict of laws rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Pennsylvania's choice of law methodology applies the laws of the state with the most significant relationship or most significant contacts to the dispute. *Griffith v. United Air Lines, Inc.*, 203 A.2d 796, 802, 805 (Pa. 1964); *see also McDonald v. Whitewater Challengers, Inc.*, 116 A.3d 99, 106 (Pa. Super. Ct. 2015) (holding the *Griffith* methodology applies to contractual disputes where there are no statutory or contractual choice of law provisions). The first step is to determine whether there is an actual conflict between the laws of the competing states. *See McDonald*, 116 A.3d at 106. If there is no actual conflict, any interest the other state might have is rendered moot. *See Commonwealth v. Eichinger*, 905 A.2d 1122, 1134 (Pa. 2007). The Court must therefore determine if any actual conflict exists between Pennsylvania law and California law.

It is undisputed that if Pennsylvania law applies, Pennsylvania's insurable interest statute governs whether the policy is valid or void for lack of insurable interest at inception. The statute provides,

> No policy of life insurance shall be delivered in this Commonwealth except upon application of the person insured . . . Any person may insure his own life for the benefit of any person. . . but no person shall cause to be insured the life of another, unless the beneficiary named in such policy or agreement of life insurance, whether himself or a third person, has an insurable interest in the life of the insured. If a policy of life insurance has been issued in conformity with this section, no transfer of such policy or any interest thereunder shall be invalid by reason of a lack of insurable interest of the transferee in the life of the insured or the payment of premiums thereafter by the transferee.

40 Pa. Cons. Stat. § 512 (emphasis added). The statute thus has three relevant provisions: (1) a life insurance policy can only be purchased by the person insured, (2) no party may cause another to

4

take out a policy unless it is supported by an insurable interest in the life of the insured at inception, and (3) an otherwise compliant life insurance policy will not be invalidated merely because the beneficiary interest is later transferred or a transferee pays the premiums.

Harold Barsky's policy meets these requirements. Mr. Barsky himself purchased the policy. Whether or not Mr. Barsky was "caused" to purchase the policy is irrelevant because the policy was supported by an insurable interest; namely, his life. The fact that Mr. Barsky later transferred the beneficiary interest in his policy to a trust for the benefit of investors is also irrelevant because the statute expressly allows this. *See Principal Life Ins. Co. v. DeRose*, No. 1:08-CV-2294, 2011 WL 4738114, at *5 (M.D. Pa. Oct. 5, 2011) (holding Section 512 is unambiguous and does consider intent or good faith of the parties); *Sun Life Assur. Co. of Can.v. The Nathan Naftoli Richter Tr.*, No. CI-15-3872, 4, 5 (Phila. Ct. Com. Pl. Nov. 12, 2020) (holding "a STOLI scheme where an insurable interest existed at the inception of the policy, does not contravene [Section 512]" and the "intention and motivation of the various actors involved in the procurement and sale of the beneficial interests" are irrelevant). Mr. Barsky's policy was thus valid *ab initio* under Pennsylvania law because it had a valid insurable interest at inception.

The Estate's reliance on historical case law is misplaced. Life insurance policies historically had to be supported by an insurable interest at inception. *See Grigsby v. Russell*, 222 U.S. 149, 156 (1911). The Pennsylvania legislature codified this common law requirement in 1921, but the statute did not address whether a policy could be transferred to an individual lacking an insurable interest. *See* Act of May 17, 1921, Pub. L. No. 682, No. 284. In 1940, the Supreme Court of Pennsylvania addressed the issue and held the statute prohibited assignments to any person or entity that lacked an insurable interest in the insured and paid the policy premiums. *Werenzinski*

*v. Prudential Insurance Company of America*, 14 A.2d 279, 280–81 (Pa. 1940). The legislature amended the statute in 1951, effectively overruling the common law trend observed in *Werenzinski,* by adding the following language to the statute: "[i]f a policy of life insurance has been issued in conformity with this section, no transfer of such policy or any interest thereunder shall be invalid by reason of a lack of insurable interest of the transferee in the life of the insured or the payment of premiums thereafter by the transferee." 40 Pa. Cons. Stat. § 512. The pre-1951 Pennsylvania case law is therefore not persuasive. The law in Pennsylvania is a later transfer and payment of premiums by a transferee is allowable, and intent of the parties is irrelevant.

The policy is also valid under California law. The California insurance code states, "an interest in the life or health of a person insured must exist when the insurance takes effect, but need not exist thereafter or when the loss occurs." Cal. Ins. Code § 286. The code also states,

> An individual has an unlimited insurable interest in his or her own life, health, and bodily safety and may lawfully take out a policy of insurance on his or her own life, health, or bodily safety *and have the policy made payable to whomsoever he or she pleases, regardless of whether the beneficiary designated has an insurable interest.*

Cal. Ins. Code § 10110.1(b) (emphasis added). California law also permits the subsequent transfer of life insurance policies. *Id.* § 10130 ("A a life or disability policy may pass by transfer, will or succession to any person, whether or not the transferee has an insurable interest. Such transferee may recover upon it whatever the insured might have recovered."); *see also Lincoln National Life Insurance Co. v. Gordon R.A. Fishman Irrevocable Life Trust*, 638 F. Supp. 2d 1170, 1177–79 (C.D. Cal. 2009) (holding as long as an insurable interest exists at inception, pre-existing agreements to finance or sell the policy, or the insured's intent to do so, are "legally irrelevant"). Thus, if an insurable interest exists at inception, the policy is freely alienable immediately after purchase.

There is no true conflict between California law and Pennsylvania law on insurable interests and transfers of life insurance policies. Both states expressly permit the type of life insurance transaction undertaken by Mr. Barsky and the investor defendants in this case. The Estate's claim for recovery thus fails as a matter of law.

The Estate's unjust enrichment claim also fails. Defendants were not unjustly enriched because the transfer of beneficiary interest was valid, and they were legitimately entitled to the death benefit. *See Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 492–93 (E.D. Pa. 2016) (unjust enrichment claim based on unlawful or improper conduct "such as fraud" fails when claim based on underlying conduct dismissed). The Court will therefore dismiss Count II as well.

**CONCLUSION**

Harold Barsky's insurance policy was validly supported by an insurable interest at inception, and the transfer of the policy interest to foreign investors is plainly allowed by Pennsylvania and California law. The Estate therefore fails to state a claim upon which relief may be granted, and the Court will dismiss the Amended Complaint.

An appropriate order follows.

BY THE COURT:

 /s/ Juan R. Sánchez
Juan R. Sánchez, C.J.